## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| H&C ANIMAL HEALTH, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-CV-02271-JWB-ADM |
| | ) | |
| | ) | |
| CEVA ANIMAL HEALTH, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**STINSON LLP**

Sean W. Colligan, KS #25727
Victoria L. Smith, KS #16502
Bryce E. Langford, KS #27548
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Tel: (816) 842-8600
Fax: (816) 691-3495
sean.colligan@stinson.com
vicki.smith@stinson.com
bryce.langford@stinson.com

*Attorneys for Defendant*

CORE/0831912.0014/159961597.7

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    BACKGROUND AND SUMMARY OF ARGUMENT ................................... 2

       A.    H&C's Antitrust Claims Fail As A Matter Of Law ............................... 2

       B.    H&C's Contract Claims Fail To Identify A Breach Of The Distribution
             Agreement, And Even If There Is A Breach, H&C's Damages Are
             Excluded By A Limitation Of Liability Clause ...................................... 4

III.   LEGAL STANDARD ...................................................................................... 5

IV.    ANTITRUST CLAIMS .................................................................................... 6

       A.    Plaintiff Fails To State A Claim Under Section 2 Of The Sherman Act For
             Monopolization Or Attempted Monopolization Because Plaintiff Fails To
             Plead Any Anticompetitive Act Giving Rise To Section 2 Liability ..................... 6

             1.    Under The Sherman Act, Manufacturers Like Ceva Are Permitted
                   To Choose To Whom And At What Price They Sell Their Products ........ 7

             2.    The Limited Exception Set Forth In Aspen Skiing Does Not Apply ......... 8

       B.    Plaintiff Fails To State A Claim Upon Which Relief May Be Granted
             Under The Robinson Patman Act ........................................................ 13

       C.    Count IV Fails As A Matter Of Law .................................................... 16

V.     THE CONTRACT CLAIMS ........................................................................ 17

       A.    H&C's Claim For Specific Performance Fails Because H&C Has Not
             Alleged Any Obligation That Ceva Has Failed To Perform ................................ 17

       B.    H&C's Claim For Breach Of Contract Fails Because H&C Has Not
             Alleged Any Obligation That Ceva Has Breached ............................... 19

       C.    H&C's Claim For Breach Of The Implied Covenant Of Good Faith And
             Fair Dealing Fails Because H&C Has Not Alleged An Underlying Breach
             Of Contract, Which Is A Required Element ......................................... 22

       D.    H&C's Complaint Fails To State A Contract Claim Because It Only
             Alleges Indirect Damages And Lost Profits, Which Are Prohibited By The
             Limitation Of Liability Provision In The Distribution Agreement ...................... 25

VI.    CONCLUSION .............................................................................................. 27

CORE/0831912.0014/159961597.7

## Cases

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) .................................................. passim

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,*
472 U.S. 585 (1985) .......................................................................................................... passim

*Augusta News Co. v. Hudson News Co.,*
269 F3d 41 (1st Cir. 2001) .................................................................................................. 16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ........................................................ 5

*Best Brands Beverage, Inc. v. Falstaff Brewing Corp.,*
842 F. 2d 578 (2d Cir. 1987) ................................................................................................ 15

*Cease v. Safelite Glass Corp.,*
927 F. Supp. 1452 (D. Kan. 1996) ................................................................................... 2, 16

*Christy Sports, LLC v. Deer Valley Resort Co.,*
555 F.3d 1188 (10th Cir. 2009) ..................................................................................... 6, 11, 12

*Credit Corp. v. Harris,*
212 Kan. 310, 510 P.2d 1322 (Kan. 1973) ......................................................................... 19

*F.T.C. v. Henry Broch & Company,*
363 U.S. 161 (1960) ............................................................................................................. 16

*Flight Concepts Ltd. P'ship v. Boeing Co.,*
38 F.3d 1152 (10th Cir. 1994) .............................................................................................. 24

*George Haug Co. v. Rolls Royce Motor Cars Inc.,*
148 F.3d 136 (2d Cir. 1998) ................................................................................................. 14

*Hezlep v. A–1 Oil & Gas Co.,*
112 Kan. 661, 212 P. 881 (Kan. 1923) ................................................................................ 18

*In re Adderall XR Antitrust Litig.,*
754 F.3d 128 (2d Cir. 2014) ................................................................................................. 10

*In re Independent Service Organizations Antitrust Litigation,*
989 F. Supp. 1131 (D. Kan. 1997) ........................................................................................ 10

*Integon Indem. Corp. v. Thorup Bldg. & Design, Inc.,*
No. CIV. A. 89-2005-O, 1989 WL 75630 (D. Kan. June 29, 1989) ......................................... 22

*Kan. Penn Gaming, LLC v. Collins,*
656 F.3d 1210 (10th Cir. 2011) .............................................................................................. 5

iii

*Moore v. The Climate Corp.*, No. 15-4916-DDC-KGS,
  2016 WL 4527991 (D. Kan. Aug. 30, 2016) .......................................................... 22

*Mr. Elec. Corp. v. Khalil*,
  No. 06-CV-02414-CM, 2012 WL 628177 (D. Kan. Feb. 27, 2012) ....................................... 18

*No Spill, Inc. v. Scepter Canada, Inc.*,
  429 F. Supp. 3d 768 (D. Kan. 2019)................................................................ 5, 6, 26, 27

*Novell, Inc. v. Microsoft Corp.*,
  731 F.3d 1064 (10th Cir. 2013) ...................................................................... passim

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
  797 F.2d 370 (7th Cir. 1986) .......................................................................... 6

*Pac. Bell Tel. Co. v. Linkline Commc'ns*,
  555 U.S. 438 (2009)...................................................................................... 7

*Panhandle Agri-Serv., Inc. v. Becker*,
  231 Kan. 291, 644 P.2d 413 (Kan. 1982) .............................................................. 26, 27

*Parsons v. Ford Motor Co.*,
  669 F.2d 308 (5th Cir. 1982) .......................................................................... 3, 8

*SCM Corp. v. Xerox Corp.*,
  645 F.2d 1195 (2d Cir.1981)........................................................................... 10

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) ..................................................................................... 6

*Stechschulte v. Jennings*,
  297 Kan. 2, 298 P.3d 1083 (Kan. 2013) ............................................................... 19, 27

*Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*,
  340 F. Supp. 2d 1189 (D. Kan. 2004)................................................................... 22

*Texaco v. Hasbrouck*,
  496 U.S. 543 (1990)..................................................................................... 14

*Tongish v. Thomas*,
  251 Kan. 728, 840 P.2d 471 (Kan. 1992) ................................................................ 26

*United States v. Colgate & Co.*,
  250 U.S. 300 (1919)................................................................................... 2, 8

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966)...................................................................................... 6

iv

*Utility Trailers of Wichita, Inc. v. Citizens Nat'l Bank & Trust Co.*,
    11 Kan. App. 2d 421, 726 P.2d 282 (Kan. Ct. App. 1986) ...................................................... 22

*VBR Tours, LLC v. Nat'l R.R. Passenger Corp.*,
    No. 14-CV-00804, 2015 WL 5693735 (N.D. Ill. Sept. 28, 2015) ............................................ 13

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398, 124 S. Ct. 872, 157 L. Ed. 2d 823 (2004) ................................................ 3, 6, 7, 9

*Wayman v. Amoco Oil Co.*,
    923 F. Supp. 1322 (D. Kan. 1996) .......................................................................................... 24

**Statutes**

15 U.S.C. §13(a) .......................................................................................................... 14, 15, 16

15 U.S.C. §13(f) ................................................................................................................ 14, 16

15 U.S.C. § 2 ................................................................................................................. 6, 7, 8, 9

15 U.S.C. § 13(a) and (c) ................................................................................................... 15, 16

K.S.A. § 50-149 ............................................................................................... 2, 16, 17, 28

K.S.A. § 84-2-716 ................................................................................................................... 17

K.S.A. § 84-2-715(2)(a) .......................................................................................................... 27

CORE/0831912.0014/159961597.7

## I.     <u>INTRODUCTION</u>

Defendant Ceva Animal Health, LLC ("Ceva") files this memorandum in support of its motion to dismiss Plaintiff H&C Animal Health, LLC's ("H&C") Complaint.  Plaintiff's Complaint contains seven claims that generally fall into two broad categories: antitrust claims and breach of contract claims.  Plaintiffs' antitrust claims include alleged violations of Section 2 of the Sherman Act (Counts 1 Monopolization and 2 Attempted Monopolization); violations of the Robinson Patman Act for price discrimination (Count 3); and violations of the Kansas Restraint of Trade Act ("KRTA") for price discrimination (Count 4).  These claims fail because plaintiff has not pled cognizable claims under the Sherman Act or Robinson Patman Act, and because the KRTA provides no private cause of action.

Plaintiffs' breach of contract claims include claims for specific performance (Count 5); breach of contract (Count 6); and breach of the implied covenant of good faith and fair dealing (Count 7).  These breach of contract claims all arise out of Ceva's alleged breach of a Distribution Agreement that governs the relationship between the parties.  H&C's breach of contract claims all fail for the same reason: H&C fails to allege any obligations that Ceva has actually breached.  H&C's complaint alleges various provisions of the Distribution Agreement that H&C was unable to follow, but there are no facts alleging that Ceva breached the Distribution Agreement.

For these reasons and as more specifically set forth below, H&C's Complaint fails to state a claim for which relief can be granted and should be dismissed.

CORE/0831912.0014/159961597.7

## II.   <u>BACKGROUND AND SUMMARY OF ARGUMENT</u>

Ceva manufactures and sells veterinary pharmaceutical products.  (Complaint ¶ 2.)[1]  Ceva and H&C entered into a Distribution Agreement, authorizing H&C to sell Ceva's products in pet stores and with online retailers.  (*Id.* ¶ 3.)  The Distribution Agreement is set to expire at the end of 2020.  (*Id.*)  H&C alleges that after a number of years, Ceva breached the Distribution Agreement by "restricting H&C's access to Ceva Products, by imposing discriminatory price increases on H&C, and by seizing distribution and sales that H&C was entitled to make under the Agreement."  (*Id.* ¶ 5.)  For these breaches, H&C seeks damages for lost sales, lost margin, lost profits, and reputational and operational harm.  (*Id.*)  H&C also alleges that Ceva's conduct violated certain federal and state antitrust laws.

### A.   **H&C's Antitrust Claims Fail As A Matter Of Law**

H&C first alleges that Ceva's conduct violates state and federal antitrust laws. (Complaint ¶ 6.)  H&C's antitrust claims fail for a number of reasons.  First, Plaintiffs' monopolization and attempted monopolization claims (Claims 1 and 2) fail because H&C fails to plead the facts necessary to prove such a claim.  It is black letter law that a manufacturer generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently.  *See United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919).  Further, "[e]very manufacturer has a natural monopoly in the sale of his own products" and that natural monopoly does not violate antitrust laws.  *Parsons v. Ford Motor Co.*, 669 F.2d 308, 312 (5th Cir. 1982), *cert. denied*, 459 U.S. 832 (1982).  Plaintiff's claim fails on this basis alone.

Ignoring that this is a simple case of a contractual dispute between a manufacturer and a distributor, plaintiff attempts to assert claims under the Sherman Act for monopolization and

---

[1] At the Motion to Dismiss stage, Ceva is referencing the Complaint as if all the facts alleged were true. Ceva reserves and does not waive its right to contest the accuracy of the alleged facts later in the litigation.

attempted monopolization—claiming that Ceva has the obligation to deal with plaintiff under the narrow exception set forth *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 689 (1985).  In addition to the other elements that must be plead to support a claim of monopolization or attempted monopolization under *Aspen Skiing* for failure to sell to a competitor, a plaintiff must show two conditions.  "First, as in *Aspen*, there must be a preexisting voluntary and presumably profitable course of dealing between the monopolist and rival."  *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013) *(*quoting *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409, 124 S. Ct. 872, 880, 157 L. Ed. 2d 823 (2004)*)*.  "Second, as in *Aspen*, the monopolist's discontinuation of the preexisting course of dealing must suggest a willingness to forsake short-term profits to achieve an anti-competitive end."  *Id.*

H&C's attempt to use *Aspen Skiing* fails on the pleadings as to both factors.  First, the course of dealing between Ceva and H&C is not of the same nature as that between the two operators of ski resorts that existed in *Aspen Skiing.*  In *Aspen Skiing*, both the plaintiff and the defendant operated their own independent ski resort prior to their course of dealing in selling a joint ski ticket; thus, they were competitors before they entered into the business relationship. H&C does not plead that it had its own competing product that it was selling prior to its relationship as a wholesale distributor for Ceva's products, in the relevant market alleged by H&C.  Accordingly, H&C cannot meet the first prong of the *Aspen Skiing* test—it was not, in fact, a competitor of Ceva; it had no competing product of its own.  Second, plaintiff fails to allege facts that could establish factor two: a willingness to forsake short-term profits to achieve an anticompetitive end.  Indeed, H&C's complaint alleges that Ceva was attempting to obtain

higher profits–short term and long term.  Accordingly, H&C's claims for monopolization and attempted monopolization fail as a matter of law.

H&C alleges in claim 3 that Ceva has violated the Robinson Patman Act by (1) selling its products at different prices to its wholesale distributor H&C for re-sale in two different channels, and (2) selling its products to its wholesale distributor H&C at a different price than the price Ceva charged to an e-commerce retailer, Amazon.  As demonstrated below, H&C's Robinson Patman Act claim fails because H&C cannot meet the requirement that differential pricing was given to two different purchasers on the same competitive level.  Further, H&C's claim fails because it cannot demonstrate that it was injured by the acts it alleges.

Finally, H&C's claim 4 for violation of K.S.A. § 50-149 fails as a matter of law because there is no private cause of action pursuant to that provision.  *See Cease v. Safelite Glass Corp.*, 927 F. Supp. 1452, 1455 (D. Kan. 1996) ("[T]he Kansas legislature did not intend to create a private cause of action when it enacted K.S.A. § 50–149 [The Kansas Restraint of Trade Act].") For all of these reasons, H&C's antitrust claims fail as a matter of law.

### B.    H&C's Contract Claims Fail To Identify A Breach Of The Distribution Agreement, And Even If There Is A Breach, H&C's Damages Are Excluded By A Limitation Of Liability Clause

All of H&C's claimed breach of contract damages are excluded by a limitation of liability provision in the Distribution Agreement that precludes recovery of lost profits or consequential damages.  (*See* Doc. 1-1, Distribution Agreement § 13.6 ("IN NO EVENT WITH EITHER PARTY BE LIABLE FOR LOST PROFITS, OR ANY OTHER SPECIAL, PUNITIVE, INDIRECT, CONSEQUENTIAL OR INCIDENTAL DAMAGES . . . .".)  So H&C's breach of contract claims seeking damages all fail under the express language of the Distribution Agreement.

4

To the extent H&C does have a remedy available, H&C fails to plead any facts suggesting that Ceva has breached the Distribution Agreement.  Every allegedly breaching act by Ceva is either permitted or not prohibited by the Distribution Agreement.  The Distribution Agreement does not prevent Ceva from restricting H&C's access to products because accepting H&C's orders is under the sole discretion of Ceva.  (Distribution Agreement § 3.2.)  Similarly, the Distribution Agreement gives Ceva sole discretion on pricing.  (Distribution Agreement § 5.1.)  H&C claims that Ceva breached the Distribution Agreement by making sales that H&C was exclusively entitled to make, but H&C only alleges that Ceva sold ThunderEase (Complaint ¶ 95), which is not governed by the exclusivity provisions of the Distribution Agreement (Distribution Agreement § 1.32 and Appendix A).  H&C also alleges it is entitled to specific performance because it has provided binding forecasts to Ceva, it is required to maintain a three-month inventory, and it is required to make minimum annual purchases.  (Complaint ¶¶ 209-11.)  But each of these provisions places an obligation on H&C not Ceva, so none of them can be breached by Ceva.  For all these reasons, H&C's breach of contract claims fail to state a claim for which relief can be granted.

## III.  <u>LEGAL STANDARD</u>

To survive a motion to dismiss, "a complaint must contain factual allegations that, assumed to be true, 'raise a right to relief above the speculative level' and must include 'enough facts to state a claim for relief that is plausible on its face.'"  *No Spill, Inc. v. Scepter Canada, Inc.*, 429 F. Supp. 3d 768, 773 (D. Kan. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).  "'[M]ere labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegation to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

CORE/0831912.0014/159961597.7

"[T]he court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth." *No Spill*, 429 F. Supp. 3d at 774 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)).  The court must next "determine whether the factual allegations, when assumed true, 'plausibly give rise to an entitlement of relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679)).

The Distribution Agreement contains a choice of law provision choosing the law of Kansas to govern interpretation of the Distribution Agreement.  (Distribution Agreement § 11.1.) Kansas law therefore applies to Plaintiff's state law claims.

## IV.   <u>ANTITRUST CLAIMS</u>

### A.   Plaintiff Fails To State A Claim Under Section 2 Of The Sherman Act For Monopolization Or Attempted Monopolization Because Plaintiff Fails To Plead Any Anticompetitive Act Giving Rise To Section 2 Liability

Section 2 of the Sherman Act, 15 U.S.C. § 2, "declares that a firm shall not 'monopolize' or 'attempt to monopolize'."  *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004)   To prevail on a claim of monopolization under Section 2, plaintiff must plead and prove that the defendant possesses monopoly power in a properly defined relevant market, and "'the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'"  *Id.* (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570–571 (1966)). Establishing attempted monopolization requires proof "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).  "Under both types of § 2 claims" plaintiff must plead both power in a relevant market and anticompetitive conduct.  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d

1188, 1192 (10th Cir. 2009).  Conduct that is legal for a monopolist is also legal for an aspiring

monopolist.  *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 373 (7th Cir.

1986) (Posner, J.) (citing 3 Phillip E. Areeda & Donald F. Turner, *Antitrust Law* ¶ 828a (1978)).

Although Ceva denies plaintiff can prove any element of its antitrust claims, in this

motion to dismiss, Ceva challenges only the sufficiency of the pleading as to the anticompetitive

conduct necessary to support a claim for either of its Section 2 claims.  It is important to note that

unless there is anticompetitive behavior of the type the antitrust laws prohibit, the possession of

monopoly power and charging of monopoly prices is lawful.  *See Trinko*, 540 U.S. at 407 ("[t]he

mere possession of monopoly power, and the concomitant charging of monopoly prices, is not

only not unlawful; it is an important element of the free-market system.").  Such opportunity to

reap profits is what incentivizes businesses to innovate to bring products to market.  *Id.*

The gravamen of plaintiff's allegations of anticompetitive conduct to support its Section

2 claims is that Ceva refused to deal with H&C, and for the product it did sell, H&C complains

of the price at which it was sold.  Plaintiff has failed to state a claim because under the Sherman

Act manufacturers like Ceva have no obligation to sell their product to any particular business,

and they may determine the price at which it is sold.  Although plaintiff attempts to circumvent

this black letter law by invoking the limited exception to the general rule of firm independence

set forth in *Aspen Skiing*, this exception does not apply under the facts pled by H&C.

Accordingly, as demonstrated below, plaintiff's Sherman Act claims fail.

### 1.     *Under The Sherman Act, Manufacturers Like Ceva Are Permitted To Choose To Whom And At What Price They Sell Their Products*

Longstanding antitrust precedent establishes that "'as a general rule . . . purely unilateral

conduct' does not run afoul of Section 2— 'businesses are free to choose' whether or not to do

business with others and free to assign what prices they hope to secure for their own products."

*Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1072 (10th Cir. 2013) (quoting *Pac. Bell Tel. Co. v. Linkline Commc'ns,* 555 U.S. 438, 448 (2009)); *see also United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919) (a manufacturer generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently).  Further, "[e]very manufacturer has a natural monopoly in the sale of his own products" which does not violate antitrust laws.  *Parsons v. Ford Motor Co.*, 669 F.2d 308, 312 (5th Cir. 1982), *cert. denied*, 459 U.S. 832 (1982).  The Sherman Act also permits a manufacturer to set the prices it wishes to charge for its products, and to terminate resellers who do not charge the minimum price the manufacturer has set for the sale of its products.  *See Colgate*, 250 U.S. at 307 (a manufacturer generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently).  Accordingly, because what plaintiff alleges boils down to choices Ceva is entitled to make—who to sell to and at what price—no act plaintiff alleges supports a claim under Section 2 of the Sherman Act.

### 2.  *The Limited Exception Set Forth In* Aspen Skiing *Does Not Apply*

Ignoring that this is a simple case of a contract dispute between a manufacturer and its distributor, plaintiff attempts to shoehorn the facts of this case to meet a narrow exception to the general principle that a business is free to choose to whom it sells its product and on what terms set forth in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 601 (1985).  "To invoke *Aspen*'s limited exception . . . at least two features present in *Aspen* must be present." *Novell*, 731 F.3d at 1074.  "First, as in *Aspen*, there must be a preexisting voluntary and presumably profitable course of dealing between the monopolist and rival."  *Id.*  "Second, as in *Aspen*, the monopolist's discontinuation of the preexisting course of dealing must suggest a willingness to forsake short-term profits to achieve an anti-competitive end."  *Id.*  In other words, the monopolist's conduct must be irrational but for its anticompetitive effect.  *See Aspen Skiing*, 472 U.S. at 597 (a refusal to deal with a competitor does not violate section 2 if "valid business

reasons exist for that refusal"); *Trinko*, 540 U.S. at 407 (defendant must be seeking "an anti-competitive end").  Plaintiff can meet neither of these elements.

>    a.    *Plaintiff Cannot Meet The First Prong Of Aspen Skiing, A Pre-Existing Voluntary And Presumably Profitable Course Of Dealing Between A Monopolist And A Competitor*

The exception in *Aspen Skiing* is narrow.  As stated in *Trinko*, "*Aspen Skiing* is at or near the outer boundary of § 2 liability."  *See Trinko*, 540 U.S. at 409.  "Since *Aspen*, the Supreme Court has refused to extend liability to various other refusal to deal scenarios, emphasizing that *Aspen* represents a 'limited exception' to the general rule of firm independence."  *Novell*, 731 F.3d at 1074 (quoting *Trinko*, 540 U.S. at 409).  In *Aspen Skiing*, four mountain ski resorts were located in Aspen Colorado.  *Aspen Skiing*, 472 U.S. at 589.  At the time of the Complaint, the defendant owned three resorts, and the plaintiff owned the fourth.  *Id.*  For years, the parties had worked together and issued a joint multi-day, all-resort ski pass.  *Id.*  The defendant was frustrated with the profit-sharing and cancelled the joint ticket.  *Id.* at 592.  The plaintiff was worried it would be pushed out of the market, and it took a number of steps to create a joint ticket, including, in effect, offering to buy the defendant's tickets at retail price.  *Id.* at 593.  The defendant refused even that.  *Id.*  Prior to the joint ticket that was marketed by both parties in the case, the plaintiff had its own ski run that competed with other ski runs in Aspen.  *Id.* at 589.

The relationship between H&C and Ceva as set forth in the Complaint is materially different than that in *Aspen Skiing*—H&C does not have its own competing pheromone products, and did not have any such products prior to becoming a distributor of Ceva's products.  In *Aspen Skiing*, the parties competed before ever doing business with one another.  Although plaintiff attempts to plead itself into being a competitor by making a legal conclusion in paragraph 172, alleging that Ceva "relinquish[ed] any natural monopoly over the distribution and sale of its

Products" when it "created a distribution network of wholesalers," it does not plead that it had a competing product before becoming a distributor of Ceva's product.  Plaintiff's allegation does not and cannot elevate a simple contract dispute between a manufacturer and wholesaler into an antitrust dispute.  As stated by the Second Circuit, "[t]he mere existence of a contractual duty to supply goods does not by itself give rise to an antitrust 'duty to deal.'"  *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 135 (2d Cir. 2014), *as corrected* (June 19, 2014).  Like the plaintiff in *Adderall,* the plaintiff here appears to have done "little more than attach antitrust 'labels and conclusions' to what is, at most, an ordinary contract dispute . . . ." *Id.* at 135-36 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Further, in paragraph 33 of its Complaint, plaintiff alleges, in pertinent part, "[m]any, if not all, of Ceva's Products are protected by U.S. patents."  A patent gives its holder the exclusive right to make, use or sell its product—it is in essence a legal monopoly.  Patent holders may not be held liable under the antitrust law for refusing to sell or license their products, including through a claim under *Aspen Skiing*.  *See In re Independent Service Organizations Antitrust Litigation*, 989 F. Supp. 1131, 1134 (D. Kan. 1997) (citing *SCM Corp. v. Xerox Corp*., 645 F.2d 1195, 1206 (2d Cir.1981), *cert. denied*, 455 U.S. 1016 (1982)).  To the extent there are patented products at issue, this also demonstrates that the relationship between Ceva and H&C is not one of competitor and rival as in *Aspen Skiing*, but one where Ceva is entitled to control the distribution and sale of its product.

Accordingly, because plaintiff fails to meet the first prong of the *Aspen Skiing* test, a presumably profitable voluntary course of dealing between competitors, H&C's Sherman Act claims should be dismissed.

CORE/0831912.0014/159961597.7

>   b.   *Even If Ceva And H&C Were Competitors, Plaintiff Fails To State*
>        *A Claim Because The Facts Pled Do Not Meet The Second*
>        *Requirement Necessary To State A Claim Under* Aspen Skiing

Assuming, arguendo, that Ceva and H&C were *competitors* who entered into a voluntary course of dealing that was presumably profitable, plaintiffs' Section 2 claims still fail because plaintiff cannot meet the second requirement necessary to invoke *Aspen Skiing*.  Under the second requirement, "the monopolist's discontinuation of the preexisting course of dealing must suggest a willingness to forsake short-term profits to achieve an anti-competitive end."  *Novell*, 731 F.3d at 1075.  In other words, the monopolist's conduct must be irrational but for its anticompetitive effect.  *Id.*  A refusal to deal with a competitor does not violate Section 2 if "valid business reasons exist for that refusal."  *See Aspen Skiing*, 472 U.S. at 597.  "The critical fact in *Aspen Skiing* was that there were no valid business reasons for the refusal."  *Christy Sports,* 555 F.3d at 1197.

In its Complaint, plaintiff alleges that Ceva was raising its prices and is seeking to make more sales itself rather than through distributors.  (*See* Complaint ¶¶ 65-66 (explicitly alleging that Ceva was acting to obtain higher prices in the ecommerce channel); ¶ 89 (Ceva imposed price increases between 29% and 98% for products); ¶ 67 (notified H&C that it would not renew its agreement with H&C); ¶ 94 (Ceva began to take for itself the sales H&C had been making in the pet store and ecommerce channels).)  Although H&C tries to attach a nefarious motive to these actions to claim Ceva was foregoing short term profits, plaintiff's bald assertions and legal conclusions are inconsistent with the facts pled.  (*See* Complaint ¶¶ 137-142 (alleging Ceva incurred short term lost profits by reducing its sales through distributors while ignoring its own allegations that Ceva was making these sales itself, and speculating without any factual basis that Ceva made fewer overall sales or that it lost profits by making sales itself); ¶ 147 (alleging

11

without any factual basis that Ceva "sustain[ed] short term lost profits").)  The facts pled

demonstrate, at most, that Ceva was motivated by a desire to make more money selling its own

products for itself.

In *Christy Sports,* the Tenth Circuit upheld the dismissal of plaintiff's Section 2 claims

and rejected the application of *Aspen Skiing* because the refusal to deal was not motivated by

anything other than a defendant's desire to make more money for itself.  *Christy Sports*, 555 F.3d

at 1197.  In that case, the defendant had a ski resort where it had permitted plaintiff to sell ski

equipment on its property.  When defendant decided to sell ski equipment itself, it revoked

plaintiff's ability to sell ski equipment on its property, after a 15-year course of dealing.  The

court stated that "Christy should have been aware that the relationship was temporary and subject

to [defendant's] business judgment."  *Id.* at 1197.

Similar to *Christy Sports*, the only right H&C had to sell Ceva's products was a

contractual right as a distributor.  H&C should have been aware that the method of distribution

for Ceva's products was limited to the terms of the agreement, and subject to Ceva's business

judgment to sell more of its own products itself and to sell the products at prices it chose.  As the

Court in *Christy Sports* stated: "[i]f antitrust law permits a [business] to organize its business in

either of two ways, by providing . . . services itself or by allowing third parties to provide the

service on a competitive basis, we do not see why an initial decision to adopt one business model

would lock the resort into that approach and preclude adoption of the other at a later time."

*Christy Sports*, 555 F.3d at 1196.   The same logic applies here with equal force.  While Ceva

may have set up its distribution system in one way, the antitrust laws do not prohibit Ceva from

reorganizing its distribution system and choosing to increase its prices and margin by making

more sales itself.  A desire for increased profit is economically rational and therefore H&C has

12

not plead the facts necessary to establish the second requirement to state a claim pursuant to *Aspen Skiing*.

In addition, plaintiff has not alleged that Ceva has refused, in its entirety, to deal with H&C. Instead, plaintiff pleads that Ceva has not sold H&C as much product as H&C desired to purchase and that H&C is paying a higher price than it desired to pay. (Complaint ¶¶ 176, 186.) *Aspen Skiing* does not apply where the alleged monopolizer continues to sell to the plaintiff, just not at plaintiff's desired price. *VBR Tours, LLC v. Nat'l R.R. Passenger Corp.*, No. 14-CV-00804, 2015 WL 5693735, at *7 (N.D. Ill. Sept. 28, 2015). In *VBR*, plaintiffs were tour operators who sold vacation packages. *Id.* at *1. Plaintiffs alleged that Amtrak was a monopoly because it is the only nationwide leisure rail line. *Id.* Amtrak did not terminate its agreement with plaintiffs and continued to sell tickets to plaintiffs—the agreement just was not at plaintiffs' desired price. *Id.* at *7. Quoting the Tenth Circuit's decision in *Novell*, the court said, "Antitrust law does not authorize courts (or disappointed bidders) to impose their business judgments on market players. *Aspen Skiing*'s limited exception authorizes intervention only when a defendant's decision is 'irrational but for its anticompetitive effect.'" *Id.* at *9. Again, it is rational for Ceva to raise its prices and to sell more product itself, instead of using a middle-man to distribute its product. H&C should not be permitted to substitute its judgment for the rational business judgement of Ceva.

Accordingly, plaintiff cannot meet the second requirement in order to state a claim for refusal to deal under *Aspen Skiing*. Because plaintiff fails to plead facts necessary to establish either of the *Aspen Skiing* conditions necessary to make a claim for refusal to deal under Section 2 of the Sherman Act, Counts I and II should be dismissed.

**B.    Plaintiff Fails To State A Claim Upon Which Relief May Be Granted Under The Robinson Patman Act**

In Count III plaintiff alleges a claim of price discrimination pursuant to the Robinson Patman Act.  H&C alleges that Ceva has violated the Robinson Patman Act by (1) selling its products at different prices to its wholesale distributor H&C for re-sale in two different channels (Complaint ¶ 192), and (2) selling its products to its wholesale distributor H&C at a different price than Ceva sold products to an e-commerce retailer, Amazon (Complaint ¶ 195).

With regard to the first allegation of price discrimination, selling at two different prices to plaintiff H&C itself, Section 2(a) of the act prohibits price discrimination "between *different purchasers* of commodities of like grade and quality."  15 U.S.C. §13(a) (emphasis added).  Courts recognize that there must be two purchasers as an element of the claim.  As stated in *George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 141 (2d Cir.1998), "[t]o make a claim for price discrimination under the Robinson Patman Act, the plaintiff must show: '(1) that seller's sales were made in interstate commerce; (2) **that the seller discriminated in price as between the two purchasers;** (3) that the product or commodity sold to the competing purchasers was of the same grade and quality; and (4) that the price discrimination had a prohibited effect on competition.'" (citing *Texaco v. Hasbrouck,* 496 U.S. 543, 556 (1990)) (emphasis added).  H&C is not two different purchasers; it is but one purchaser.  Thus, its allegation of differing prices charged to itself cannot support a claim for price discrimination under the Robinson Patman Act.  Indeed, if H&C knowingly received a discriminatory price as it attempts to claim in the Complaint, H&C would have violated the Robinson Patman Act itself.  *See* 15 U.S.C. §13(f) ("It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce *or receive* a discrimination in price which is prohibited by this section." (emphasis added)).

Plaintiff's second theory of price discrimination is that Ceva sold its products to H&C at a higher price than that at which Ceva sold its products directly to e-commerce retailers. Plaintiff also fails to plead a cognizable claim under this theory because the allegedly discriminatory prices are not to customers at the same level of distribution.  A claim under Section 2(a) of the Robinson Patman Act requires an injury to competition, and the competition between the favored and disfavored purchasers must occur at the same functional level.  *See Best Brands Beverage, Inc. v. Falstaff Brewing Corp*., 842 F.2d 578, 585 (2d Cir. 1987).  In other words, as competitors, they must be ". . . all wholesalers or all retailers, and within the same geographic market."  *Id*.  Accordingly, because H&C is a wholesaler that sells to e-commerce retailers, it does not function at the same level as e-commerce retailers.  Thus, even if H&C were a disfavored purchaser compared to an e-commerce retailer, because H&C is a wholesaler not a retailer, there is no differential pricing between two parties at the same competitive level. Therefore H&C has not pled the requisite competitive injury to state a claim under the Robinson Patman Act.

Finally, in the heading of Count III, plaintiff labels its claim as a price discrimination claim pursuant to the Robinson-Patman Act, but plaintiff also includes the statutes at 15 U.S.C. § 13(a) and (c).  It is unclear if plaintiff is actually attempting to assert a Section 13(c) claim or not.  Section 13(a) prohibits price discrimination, and in paragraph 190 of the Complaint, plaintiff attempts to lay out the elements of a claim under Section 13(a) (although plaintiff's recitation of the elements obscures the requirement that there be two purchasers in order to state a claim).  Section 13(c) of the act is generally referred to as the Brokerage Clause.  This section states

> (c)  It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a

CORE/0831912.0014/159961597.7

> commission, brokerage, or other compensation, or any allowance or discount in
> lieu thereof, except for services rendered in connection with the sale or purchase
> of goods, wares, or merchandise, either to the other party to such transaction or to
> an agent, representative, or other intermediary therein where such intermediary is
> acting in fact for or in behalf, or is subject to the direct or indirect control, of any
> party to such transaction other than the person by whom such compensation is so
> granted or paid.

15 U.S.C. § 13(c). This portion of the statue was enacted so that the price discrimination provisions of Section 13(a) of the act could not be circumvented by making payments to "dummy brokerages" that were in essence just a method to reduce the price. *See F.T.C. v. Henry Broch & Company,* 363 U.S. 161, 168 (1960). Section 13(a) has been interpreted to cover commercial bribery. *Augusta News Co. v. Hudson News Co.*, 269 F.3d 41, 46 (1st Cir. 2001).

Plaintiff does not appear to be actually asserting this type of claim: there is no broker, agent or other type of intermediary included in any of plaintiff's allegations. To the extent plaintiff may be attempting to plead that the reduction in price that H&C received from Ceva for sales in the brick and mortar retail channel ran afoul of this provision, H&C cannot recover for any such claim since H&C itself was the recipient of any such discount. Additionally, if H&C were alleging such a cause of action, H&C's participation would mean it was admitting its own violation of Section 13(f) of the Robinson-Patman Act. *See* 15 U.S.C. § 13(f) ("It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section.") Accordingly, if any such claim is being asserted, it should also be dismissed for failing to state a claim.

### C.      Count IV Fails As A Matter Of Law

H&C's claim for violation of K.S.A § 50-149, fails as a matter of law because there is no private cause of action pursuant to that provision. *See Cease v. Safelite Glass Corp.*, 927 F. Supp. 1452, 1455 (D. Kan. 1996) ("[T]he Kansas legislature did not intend to create a private

cause of action when it enacted K.S.A. § 50–149 [The Kansas Restraint of Trade Act].")

Because there is no private cause of action, the Court should dismiss this claim.

## V.    **THE CONTRACT CLAIMS**

### A.    **H&C's Claim For Specific Performance Fails Because H&C Has Not Alleged Any Obligation That Ceva Has Failed To Perform**

H&C's fifth claim seeks specific performance under K.S.A. § 84-2-716 (the Kansas UCC

statute on specific performance).  Comment 1 to K.S.A. § 84-2-716 makes it clear that specific

performance is an available remedy *only if* there is a breach.  K.S.A. § 84-2-716, Comment 1

("The present section continues in general prior policy as to specific performance and injunction

**against breach**." (emphasis added)).  Here, H&C's claim fails because the Complaint fails to

identify a Ceva contract obligation that Ceva has breached or failed to specifically perform.

The Distribution Agreement requires H&C to make binding forecasts of product it

intends to purchase.  (Distribution Agreement § 3.1.)  The Distribution Agreement also requires

H&C to maintain three months of inventory. (*Id.* § 7.4.)  Further, the Distribution Agreement

requires H&C to make minimum annual purchases. (*Id.* § 3.4.)  H&C alleges that Ceva has

breached the Distribution Agreement because H&C is unable to fulfill its own contractual

obligations.  (Complaint ¶¶ 212, 214.)  But H&C has not alleged that *Ceva* breached *its*

obligations under the Distribution Agreement – only that H&C is unable to fulfill its own

obligations.

The Distribution Agreement's terms place the forecast, inventory, and annual purchase

obligations squarely on H&C and not on Ceva.

| Obligation on H&C | Obligation on Ceva | Distribution Agreement Section |
|---|---|---|
| "**Distributor** [H&C] **will furnish** Ceva an initial | None. | Section 3.1 |

| | | |
|---|---|---|
| written forward forecast of the quantities of Product (by SKU) that Distributor anticipates it will order from Ceva . . . ." (emphasis added). | | |
| "At all times, **Distributor** [H&C] **shall maintain** at least a three (3) month supply . . . in inventory." (emphasis added). | None. | Section 7.4 |
| "**Distributor** [H&C] **shall purchase** from Ceva, a minimum annual quantity of the Product . . . ." (emphasis added). | None. | Section 3.2 |

The plain language of the Distribution Agreement puts these obligations on H&C. "If the contract has a plain and definite meaning, then it is not ambiguous and the court can construe the contract as a matter of law." *Mr. Elec. Corp. v. Khalil*, No. 06-CV-02414-CM, 2012 WL 628177, at *2 (D. Kan. Feb. 27, 2012) (citing *Hezlep v. A–1 Oil & Gas Co.,* 112 Kan. 661, 212 P. 881, 882–83 (Kan. 1923)). There is no ambiguity about who is obligated under these sections of the Distribution Agreement. H&C cannot allege a breach and seek specific performance against Ceva for obligations that the Distribution Agreement imposes on H&C rather than on Ceva.

To the extent H&C relies on section 12.2.6, representing that Ceva will not undertake commitments inconsistent with its obligations under the Distribution Agreement, that provision is inapplicable here because the provisions cited by H&C do not create "obligations" for Ceva. The plain language only obligates H&C.

H&C might have had a colorable counterclaim against Ceva for breach of the duty of good faith and fair dealing **if** Ceva were bringing a breach of contract claim against H&C. But Ceva is not. To the extent that H&C has not met its purchase and inventory requirements, Ceva

CORE/0831912.0014/159961597.7

has waived those provisions and not claimed breach by H&C.  The Complaint does not allege a situation where Ceva has prevented H&C from meeting its contractual obligations and then used that nonperformance to claim breach.  Accordingly, it does not properly allege a breach of the implied covenant of good faith and fair dealing.

Finally, H&C's binding forecasts merely constitute an order under the Distribution Agreement.  Nothing in the contract requires Ceva to accept an order, and the contract is clear that orders only become binding on Ceva when Ceva accepts them.  (Distribution Agreement § 3.2 ("No purchase order shall be binding on Ceva unless and until accepted by Ceva.").)

H&C has therefore failed to identify any express or implied contractual obligation that Ceva has breached, and its fifth claim for specific performance should be dismissed.

### B.     H&C's Claim For Breach Of Contract Fails Because H&C Has Not Alleged Any Obligation That Ceva Has Breached

H&C's sixth claim for relief for breach of contract fails for the same reasons as H&C's claim for specific performance: H&C does not identify any contractual provision that Ceva has breached.  Under Kansas law, a plaintiff must plead facts to support the following elements to state a claim for breach of contract: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach.  *Stechschulte v. Jennings*, 297 Kan. 2, 23, 298 P.3d 1083, 1098 (Kan. 2013) (citing *Comm. Credit Corp. v. Harris*, 212 Kan. 310, 313, 510 P.2d 1322 (Kan. 1973)).

As discussed above, H&C has only identified its own obligations in the Distribution Agreement and not any obligations that Ceva breached.  H&C alleges that Ceva breached the Distribution Agreement by failing to allow H&C to maintain three months of inventory, failing

19

to honor forecasts by H&C, and failing to fulfill H&C mandatory minimum sales volumes. (Complaint ¶¶ 226, 227(a)-(c).)  But these provisions are all H&C's obligations – they do not place any obligations on Ceva.

H&C next alleges that Ceva breached the Distribution Agreement by delaying and under-delivering H&C's orders after Ceva accepted the orders and by rejecting and modifying H&C's orders.  (Complaint ¶ 227(d) and (e).)  But the Complaint fails to identify a single order that was accepted and then delayed, under-delivered, modified, or rejected.  Instead, H&C simply makes a conclusory statement about Ceva's order processing.  H&C is required to allege more than conclusory statements and must plead "factual content allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  H&C fails to provide any factual content for the Court to consider regarding Ceva's alleged improper fulfillment of accepted orders and therefore fails to properly allege a breach on that basis.

H&C also complains that Ceva has breached the Distribution Agreement by violating H&C's exclusive distribution rights over certain products in the Pet Store Channel.  But once again, H&C fails to plead facts showing such a violation.  The only example alleged is that Ceva acquired and sold the product "ThunderEase" to pet stores.  (Complaint ¶ 95.)  But ThunderEase is not one of the products H&C was given exclusive distribution rights to sell.  Appendix A to the Distribution Agreement specifically identifies the products H&C has exclusive rights to sell according to how they are packaged for consumers (including product, quantity/doses per package and product ID number).  (Distribution Agreement §§ 1.32 and 2.1.)  It includes approximately 22 products, none of which is ThunderEase.  Ceva therefore cannot breach the

Distribution Agreement by selling ThunderEase in the Pet Store Channel, because H&C has no right to purchase or sell ThunderEase.

To the extent H&C complains of the use of Feliway or Adaptil trademarks on the ThunderEase product labels (*see* Complaint ¶ 95), the Distribution Agreement is clear that H&C's right to use these trademarks is not exclusive.  (Distribution Agreement § 2.3 ("Ceva grants to Distributor during the Term, a **non-exclusive**, non-transferable license to the Product Trademark . . . .") (emphasis added)).  Feliway and Adaptil are both included in the definition of "Product Trademark." (Distribution Agreement ¶ 1.33 and Appendix B).

Ceva's use of the Feliway and Adaptil trademarks is not prohibited by the Distribution Agreement and cannot therefore be a basis for a breach of the Distribution Agreement.

Finally, H&C alleges that Ceva violated the Distribution Agreement by creating new reporting requirements.  (Complaint ¶ 227(g).) The Distribution Agreement specifically requires H&C to provide daily shipping reports and weekly sales and inventory reports.  (Distribution Agreement § 7.5.1.)  The Distribution Agreement goes on to allow Ceva to request "additional sales data" which H&C is then required to deliver to Ceva within 30 days of the request. (*Id.* at § 7.5.2.)  What H&C complains of – requesting additional sales data – is permitted and even anticipated in the Distribution Agreement.  Because it is specifically permitted by the Distribution Agreement, Ceva's request for additional data reporting cannot form the basis for a breach of contract claim.

As discussed above, H&C has failed to identify any contractual provision that Ceva has actually breached.  The Distribution Agreement provisions H&C points to either (1) do not create an obligation for Ceva or (2) specifically permit the conduct alleged.  For all of these reasons, H&C's sixth claim for relief for breach of contract should be dismissed.

CORE/0831912.0014/159961597.7

**C.**   **H&C's Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Fails Because H&C Has Not Alleged An Underlying Breach Of Contract, Which Is A Required Element**

Plaintiffs' seventh claim for breach of the implied covenant of good faith and fair dealing fails for the same reason as its claims for specific performance and breach of contract: H&C has failed to allege any contract provision that Ceva actually breached.  "To assert a cause of action for breach of a duty of good faith and fair dealing, a plaintiff must: '(1) plead a cause of action for 'breach of contract,' not a separate cause of action for 'breach of duty of good faith,' and (2) point to a term in the contract 'which the defendant allegedly violated by failing to abide by the good faith spirit of that term.'"  *Moore v. The Climate Corp.*, No. 15-4916-DDC-KGS, 2016 WL 4527991, at *8 (D. Kan. Aug. 30, 2016) (citation omitted) (granting defendants' motion to dismiss because plaintiffs failed to identify a specific contract term defendants violated); *see also Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 340 F. Supp. 2d 1189, 1201 (D. Kan. 2004), aff'd, 443 F.3d 1240 (10th Cir. 2006) ("[I]n order to prevail on an implied duty of good faith and fair dealing theory under Kansas law, plaintiffs must (1) plead a cause of action for 'breach of contract,' not a separate cause of action for 'breach of duty of good faith,' and (2) point to a term of the contract 'which the defendant allegedly violated by failure to abide by the good faith spirit of that term.'" (citation omitted)).

Thus, to survive a motion to dismiss, H&C must first show a contractual provision that has been breached and second that the breach was not in good faith.  H&C fails this test because it cannot meet the first prong.  As discussed above, H&C has failed to identify any specific provisions of the Distribution Agreement that Ceva has breached.  "Failure to perform an act cannot constitute a breach of the duty of good faith where there is no contractual obligation to perform the act in the first place."  *Integon Indem. Corp. v. Thorup Bldg. & Design, Inc.*, No. CIV. A. 89-2005-O, 1989 WL 75630, at *2 (D. Kan. June 29, 1989) (citing *Utility Trailers of*

*Wichita, Inc. v. Citizens Nat'l Bank & Trust Co.*, 11 Kan. App. 2d 421, 726 P.2d 282 (Kan. Ct. App. 1986)).

H&C alleges that Ceva breached the covenant of good faith and fair dealing because it modified and rejected H&C purchase orders and prevented H&C from maintaining a three-month supply of product.  (Complaint ¶ 234(a), (d).)  But as discussed above, there are no obligations that Ceva has breached.  Section 3.2 of the Distribution Agreement, which governs Purchase Orders, does not obligate Ceva to accept purchase orders, nor does it prevent Ceva from modifying orders.  So the rejection or modification of an order is not a breach of the Distribution Agreement.  As for the three-month supply of product, this is an obligation placed upon H&C – not Ceva.  Ceva cannot breach an obligation that is placed upon H&C and not Ceva.  Because there has been no breach of the Distribution Agreement, there cannot be a breach of the covenant of good faith and fair dealing.

H&C next alleges that Ceva breached the covenant of good faith and fair dealing by "imposing a capricious rebate scheme" and by "imposing discriminatory pricing."  (Complaint ¶ 234(b), (c).)  But pricing cannot be the basis for a breach of contract or breach of the covenant of good faith and fair dealing claim because the Distribution Agreement gives Ceva sole discretion over pricing.  (Distribution Agreement § 5.1.)  Where the contract leaves the challenged action to the sole discretion of a party, Kansas law does not recognize a claim for breach of the implied covenant of good faith and fair dealing:

> Although the doctrine is generally implied for all contract provisions, *it is irrelevant where the contract is drawn so as to leave a decision to the 'uncontrolled discretion' of one of the parties. In such a case, the parties contracted to allow one of them the unconditional right to act, and an implied promise to deal fairly has no purpose.*

23

*Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1355 (D. Kan. 1996), *aff'd*, 145 F.3d 1347 (10th Cir. 1998) (quoting *Flight Concepts Ltd. P'ship v. Boeing Co.*, 38 F.3d 1152, 1157 (10th Cir. 1994)) (emphasis in original).

The Distribution Agreement says that pricing "may be amended by Ceva from time to time in its sole discretion following thirty (30) days prior notice to Distributor." (Distribution Agreement § 5.1.) Amended pricing is within Ceva's discretion, which is permissible under Kansas law. H&C has therefore failed to allege any facts to show that Ceva violated the terms of the Distribution Agreement related to pricing.

H&C next alleges that Ceva breached the covenant of good faith and fair dealing by using H&C's confidential data in a manner that prevents H&C from competing in the ecommerce channel. (Complaint ¶ 234(e).) This allegation is inconsistent with the rest of H&C's complaint. Nowhere in the complaint does H&C allege that it cannot compete in the ecommerce channel or is unable to sell product in the channel. Instead, H&C admits that Ceva is still fulfilling H&C's orders. (*See* Complaint ¶ 76 (showing that Ceva filled at least 20% of H&C's orders during the first three weeks of March 2020).) Fulfilling a lower percentage of orders is not a breach of the Distribution Agreement because the Distribution Agreement gives Ceva the sole discretion to accept a purchase order. (*See* Distribution Agreement § 3.2.) Once again, H&C fails to properly allege that the Distribution Agreement has been breached, which is the first step to establishing a breach of the covenant of good faith and fair dealing.

Finally, H&C alleges Ceva breached the covenant of good faith and fair dealing by selling products to other distributors and customers ahead of H&C. (Complaint ¶ 234(f).) First, H&C has made no specific factual allegations that Ceva sold products to other distributors or customers in violation of the exclusive rights granted by the Distribution Agreement. (*See*

Distribution Agreement § 2.1.)  This lack of well-pled facts fails to meet the *Twombly*/*Iqbal* standard.  *See, e.g.*, *Iqbal*, 556 U.S. at 678.  To the extent H&C is alleging that Ceva sold product directly to distributors and customers outside the Independent Retail Channel and Pet Specialty Channel, these actions are permitted under the non-exclusive rights section of the Distribution Agreement.  (*See* Distribution Agreement § 2.2.)

For each action that H&C alleges violates the duty of good faith and fair dealing, H&C has failed to allege an underlying breach of a provision of the Distribution Agreement.  Because there is no underlying breach, H&C's claim for violation of the duty of good faith and fair dealing must fail.

### D.     H&C's Complaint Fails To State A Contract Claim Because It Only Alleges Indirect Damages And Lost Profits, Which Are Prohibited By The Limitation Of Liability Provision In The Distribution Agreement

Even if H&C's claims six and seven would otherwise survive, which they should not, H&C has failed to plead that it is entitled to any damages – which is a required element for its claims.  For its sixth and seventh claims for breach of contract and breach of the covenant of good faith and fair dealing, H&C seeks damages for "lost sales, lost margin, lost profits, lost investments, and reputational and operational harm." (Complaint ¶¶ 228, 235.)  These are the only damages H&C seeks under the Distribution Agreement, and all of them are expressly prohibited by the clear terms of the Distribution Agreement.

The Distribution Agreement contains a limitation of liability provision:

> Limits of Liability. EXCEPT FOR A BREACH OF ARTICLE 10 OR FOR
> CLAIMS OF A THIRD PARTY WHICH ARE SUBJECT TO
> INDEMNIFICATION UNDER THIS ARTICLE 13, IN NO EVENT WILL
> EITHER PARTY BE LIABLE FOR LOST PROFITS, OR ANY OTHER
> SPECIAL, PUNITIVE, INDIRECT, CONSEQUENTIAL OR INCIDENTAL
> DAMAGES, HOWEVER CAUSED AND ON ANY THEORY OF LIABILITY,
> ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE
> TRANSACTIONS CONTEMPLATED HEREBY. THIS LIMITATION SHALL
> APPLY EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF

SUCH DAMAGES, AND NOTWITHSTANDING ANY FAILURE OF
ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

(Distribution Agreement § 13.6 (capitalization in original; underline added)).  The provision

expressly excludes any indirect and lost profit damages, which are the only damages H&C seeks.

Such damage limitation provisions are enforceable under Kansas law.

Just last year, Judge Robinson enforced a similar limitation of liability provision at the

motion to dismiss stage.  In *No Spill, Inc. v. Scepter Canada, Inc.*, the parties entered into a

supply agreement for one of the defendants to supply plaintiff with fuel containers.  429 F. Supp.

3d 768, 783 (D. Kan. 2019).  The plaintiff buyer and the defendant supplier were competitors in

the fuel container market.  *Id.* at 776. Similar to H&C's allegations here, plaintiff alleged that

over time, defendant began to frustrate plaintiff's contract rights by failing to fill plaintiff's

orders.  *Id.* at 780-81.

The supply agreement in *No Spill* contained a limitation of liability provision, excluding

"INCIDENTAL, INDIRECT, SPECIAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE

DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST PROFITS OR LOST

REVENUES.'  *Id.* at 781 (capitalization in original).  Judge Robinson enforced the limitation of

liability provision and granted defendants' motion to dismiss as to any indirect damages.

In reaching this conclusion, Judge Robinson first noted that a contract "whose language is

not doubtful or obscure" should be "enforced according to its terms."  *Id.*  Judge Robinson then

went on to note that plaintiff purchased the goods from defendant at a fixed price, which meant

that plaintiff could not make a profit directly from its dealings with defendant.  *Id.* at 783.

Plaintiff could only make a profit by re-selling the goods.  *Id.*  Under both Kansas law and the

UCC, lost resale profits as a result of a supplier's breach are consequential damages.  *Id.* (citing

*Tongish v. Thomas*, 251 Kan. 728, 840 P.2d 471, 474 (Kan. 1992) (quoting *Panhandle Agri-*

*Serv., Inc. v. Becker*, 231 Kan. 291, 644 P.2d 413, 419-20 (Kan. 1982) ("We find nothing which would justify the trial court in arriving at damages using loss of business profits which are consequential damages.") and K.S.A. § 84-2-715(2)(a)).  Judge Robinson granted the motion to dismiss as to any claim for consequential lost profits, consequential lost revenues, and consequential lost sales, and only allowed the plaintiff to recover direct damages under the UCC. *Id.*

The analysis is similar here, with one key distinction: in *No Spill*, the plaintiff specifically requested direct damages, and the Court allowed the plaintiff's claim for direct damages to move forward.  *Id.*  Here, however, H&C has not sought direct damages and only seeks indirect or consequential damages.  For claims six and seven, H&C seeks damages for "lost sales, lost margin, lost profits, lost investments, and reputational and operational harm."  (Complaint ¶¶ 228, 235.)  Under *No Spill*, these are all indirect or consequential damages, which are not recoverable under the plain language of the Distribution Agreement's limitation of damages clause.  H&C's claims for breach of contract and breach of the covenant of good faith and fair dealing ultimately fail because H&C has not properly alleged an essential element of its claims, recoverable damages.  *Stechschulte*, 298 P.3d at 1098 (including damages as an essential element to a breach of contract claim).  H&C's contract claims seeking damages should be dismissed for this reason, as well.

## VI.    <u>CONCLUSION</u>

This Court should dismiss H&C's entire Complaint for failure to state a claim.  Plaintiff's antitrust claims fail because (1) the exception found in *Aspen Skiing* to the general rule under Section 2 of the Sherman act that firms may sell to whom they like and set the price is inapplicable under the facts pled; (2) the Robinson Patman Act's requirement of two purchasers at the same competitive level is not met; and (3) there is no right to a private cause of action

under K.S.A. § 50-149.  H&C's contract claims fail because it has failed to identify any

contractual provision that Ceva has breached.  To the extent they have alleged a breach, H&C's

damages are limited to its direct damages –which it does not seek in the Complaint.  For all these

reasons, the Court should dismiss the Complaint.

Respectfully submitted,

STINSON LLP

By:  */s/ Sean W. Colligan*
Sean W. Colligan, KS #25727
Victoria L. Smith, KS #16502
Bryce E. Langford, KS #27548
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Tel: (816) 842-8600
Fax: (816) 691-3495
sean.colligan@stinson.com
vicki.smith@stinson.com
bryce.langford@stinson.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of July, 2020, I filed the foregoing through the Court's
electronic filing system, which sent notice to all counsel of record.

*/s/ Sean W. Colligan*
Attorney for Defendant

CORE/0831912.0014/159961597.7